CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

APR 22 2010

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| WILLIAM CRENSHAW, | ) | CASE NO. 3:09CV00041 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | By: B. Waugh Crigler |
| of Social Security, | ) | U. S. Magistrate Judge |
| | ) | |
| Defendant. | ) | |

This challenge to a final decision of the Commissioner which denied plaintiff's March 23, 2006 claim for a period of disability and disability insurance benefits under the Social Security Act (Act), as amended, 42 U.S.C. §§ 416, 423 is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision and DISMISSING this case from the docket of the court.

In a decision issued on January 24, 2008, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since his alleged disability onset date, November 26, 1997, and that he met the insured status requirements under the Act through December 31, 2002. (R. 11.) The Law Judge determined that prior to his date last insured, plaintiff suffered the following severe impairments: discogenic and degenerative

disorder of the back with failed back surgery at the L4-5 level and osteoarthritis. (*Id.*) However, the Law Judge believed that he did not have an impairment or combination of impairments which met or equaled a listed impairment prior to his date last insured. (*Id.*) The Law Judge found that prior to his date last insured, plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work that involved occasional postural activities (climbing, balancing, stooping, kneeling, crouching and crawling) and allows a sit/stand option. (R. 12.) The Law Judge was of the belief that this RFC precluded plaintiff from performing his past relevant work[1], but that prior to his date last insured, there were jobs in the national economy that plaintiff could perform. (R. 17.) The Law Judge ultimately found plaintiff was not disabled under the Act during the time period at issue: November 26, 2007, his alleged disability onset date, through December 31, 2002, his date last insured. (R. 18.)

Plaintiff appealed the Law Judge's January 24, 2008 decision to the Appeals Council. (R. 1-3.) The Appeals Council found no basis in the record or in the reasons advanced on appeal to review the decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1.) This action ensued.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence which the court is to review for clear error or lack of substantial evidentiary

---

[1] Plaintiff's past relevant work includes that of an auto parts delivery person, carpenter, and construction worker. (R. 17.)

2

support. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

In a brief filed in support of his motion for summary judgment, plaintiff initially argues that the Law Judge's finding he did not meet § 1.04(A) of the Listings, 20 C.F.R. Part 4, Appendix 1 is not supported by substantial evidence. (Pl's Brief, pp. 16-18.) Plaintiff contends that the Law Judge makes a "blanket statement" that the requirements of Listing § 1.04(A) were not met, and as such, this court is precluded from performing a meaningful review of the finding. (Pl's Brief, p. 17.) Plaintiff notes that the Law Judge relies heavily on the opinions of the State agency physicians, and he suggests that it is impossible to know what evidence was before them. (Pl's Brief, pp. 17-18.) Finally, plaintiff argues that pursuant to Social Security Rule ("SSR") 83-20 and SSR 96-6p a medical advisor at the hearing was necessary. (Pl's Brief, p. 18.)

A person is disabled under Listing § 1.04(A) if he person suffers a spinal disorder resulting in compromise of a nerve root or spinal cord together with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04(A). Plaintiff has the burden of proving that his back disorder meets or equals a listing. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the claimant has the burden of showing that he has a medically severe impairment or combination of impairments and that the Act requires him to furnish medical evidence regarding

3

his condition); *Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1992) (stating that the burden of production and of proof is on the claimant to establish that he has an impairment that meets or equals a listing).

The evidence reveals that plaintiff suffered an injury at work on November 26, 2007, and that he subsequently underwent a L4-5 fusion on November 20, 1998. (R. 191, 200.) Even so, the objective medical findings provide substantial support for the Law Judge's decision that plaintiff did not meet or equal Listing § 1.04(A). A lumbar myelogram conducted on May 27, 1999 showed that the nerve roots of the cauda equina had a normal appearance. (R. 308.) A CT conducted on the same day showed no significant abnormality at L3-4. (*Id.*) At L4-5 there was some facet degeneration but there was no significant spinal stenosis. (*Id.*) The CT also showed that the nerve roots exited from the spinal canal in a normal fashion at L5-S1. (*Id.*) On June 22, 1999, Gregory A. Helm, M.D. noted that plaintiff's CT/myelogram revealed no evidence of nerve root compression. (R. 203.)

An orthopedic examination conducted by David S. Witmer, M.D. on February 24, 1998 also supports the Law Judge's finding. (R. 187.) Dr. Witmer's examination revealed that plaintiff's lumbar spine had some decreased motion but that he was able to tolerate the straight leg raising test in the sitting position to 90 degrees with only some pulling in the back but no significant pain below the knee. (*Id.*) The motor exam revealed no clear weakness or symmetry and his reflexes were symmetric. (*Id.*)

On July 14, 1999, Robert Wilder, a physician with the University of Virginia's Health System Department of Physical Medicine and Rehabilitation Division of Spine and Sports care, evaluated plaintiff. (R 200-202.) The physician found that plaintiff's lower extremity motor and

4

sensory function was intact. (R. 201.) Plaintiff demonstrated controlled motor function with no focal deficit. (*Id.*) Plaintiff's straight leg raising test on the left side resulted in low back pain, but the straight leg raising on the right caused no pain. (*Id.*) Plaintiff's hip range of motion was without pain. (*Id.*) Flexion extension views were performed of the lumbar spine and no instability was revealed. (*Id.*)

Finally, evidence from the State agency record reviewing physicians supports the Law Judge's finding that plaintiff did not meet or equal Listing § 1.04(A). R.S. Kadian, M.D. and William Amos, M.D. both concluded that the record did not establish the existence of a disabling impairment during the relevant time period. (R. 383, 398.)

Plaintiff's argument that SSR 83-20 and SSR 96-6p require the presence of a medical advisor at the hearing also lacks merit. SSR 83-20 deals with establishing a disability onset date. Plaintiff's alleged disability onset date is not in dispute. SSR 96-6p sets forth the following parameters under which a Law Judge must obtain an updated opinion from a medical expert:

> When no additional medical evidence is received, but *in the opinion of the Administrative Law Judge* or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> When additional medical evidence is received that *in the opinion of the administrative law judge* or the Appeals Council may change the State agency medical or psychological consultant's finding that an impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR96-6p (emphases added). There is nothing in the instant record showing the Law Judge had a duty to call a medical expert in this case.

Next, plaintiff challenges the Law Judge's conclusion that plaintiff's testimony and characterization of his pain and limitations was not entirely credible. (Pl's Brief, pp. 19-24.)

5

Plaintiff argues that the Law Judge's finding at step one in the credibility analysis is flawed, and that this is particularly critical because the objective medical findings show that he suffers the degree and type of pain he alleged. (Pl's Brief, p. 20.) Finally, plaintiff contends that the reasons set forth by the Law Judge for rejecting his statements cannot withstand scrutiny. (Pl's Brief, p. 21.) Specifically, plaintiff has alleged that the Law Judge erred in relying on a single doctor who found that "Waddell signs"[2] were present, opined that plaintiff had some monetary gain, and observed that plaintiff failed to seek treatment with specialists after 2003. (Pl's Brief, pp. 21-24.)

A claimant's subjective complaints of pain must be supported by the objective medical evidence. *Craig* 76 F.3d at 591; *Johnson v. Barnhart,* 434 F.3d 650, 657 (4th Cir. 2005). Specifically, the evidence needs to show the existence of a medical impairment which could reasonably be expected to produce the amount and degree of pain alleged. *Craig,* 76 F.3d at 591;

---

[2]The presence of more than three or four of the following signs on physical examination suggests that back pain may be exaggerated or the result of emotional distress rather than or in addition to physical injury:

Superficial tenderness to light touch on the skin.

Nonanatomical tenderness: The pattern does not conform to related anatomic structure.

Gentle pressure on the top of the head produces a complaint of back pain.

Simulated (truncal) rotation produces complaint of pain.

Straight-leg raised while patient is distracted results in a) low back or posterior thigh pain, b) diminishing pain with continued raising, or c) severe pain at only 10°.

Nonanatomical sensory change.

Sudden or uneven weakness on strength testing (give way weakness).

Exaggerated responses or responses which cannot be reproduced.

http://www.behavenet.com/capsules/diagnostic/phys/Waddellssigns.htm

*Johnson*, 434 F.3d at 657.

SSR 96-7p establishes a two-step process for evaluating or assessing a claimant's statements about his or her symptoms. Initially, the Law Judge must determine whether there is an underlying medically determinable impairment which could be expected to produce the symptoms alleged by the claimant. Once such an underlying medically determinable impairment has been found, the Law Judge must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to perform basic work activities. When the claimant's statements about the intensity, persistence, or functionally limiting effects of the symptoms are not supported by substantial objective medical evidence, the Law Judge must evaluate the claimant's credibility based on the entire record.

At step one in the two-step process the Law Judge found that plaintiff's "medically determinable impairments could reasonably be expected to *generally* produce the alleged symptoms." (R. 14. (emphasis added).) Citing *Craig v. Chater*, plaintiff alleges that this was fatal error. The applicable portion of *Craig* provides:

[F]or pain to be found to be disabling, there *must* be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but *the pain the claimant alleges she suffers*. The regulation thus requires at the threshold a showing by objective evidence of the existence of a medical impairment 'which could reasonably be expected to produce' the actual pain, in the amount and degree, alleged by the claimant.

*Craig*, 76 F.3d at 594 (emphases in original).

While the undersigned agrees that the Law Judge misstated the applicable step one standard, any error is harmless. The Law Judge's credibility finding hinged on step two of the analysis. He found that plaintiff's statements "concerning the intensity, persistence and limiting

7

effects of these symptoms [were] not entirely true prior to his date last insured." (R. 14.) This finding is supported by substantial evidence.

Plaintiff's own medical evidence does not support his allegations as to the level of pain he experiences. On June 12, 1998, James E. Patti, M.D., on behalf of treating source Donald P.K. Chan, M.D., indicated that, while plaintiff likely was permanently, partially disabled from performing his past relevant work as a carpenter, he remained able to perform other positions. (R. 212.) In fact, Dr. Patti noted that "[w]e encourage him in his efforts to find new employment." (*Id.*) Dr. Patti's opinion that plaintiff retained the RFC to perform other positions was echoed again on June 17, 1998. (R. 211.)

The evidence from the State agency record reviewing physicians also supports a finding that plaintiff did not suffer disabling pain. Drs. Kadian and Amos both opined that plaintiff retained the RFC to perform light exertional work.[3] (R. 378-383, 393-398.)

While the undersigned finds it difficult to believe that malingering or secondary gain accurately can be diagnosed by a single examination, and while the undersigned is of the view that plaintiff's failure to seek treatment after 2003 is not relevant to a decision in this case, there is ample other evidence in this record which supports the Law Judge's decision not to fully credit plaintiff's subjective complaints. For example, the Law Judge referred to orthopedic specialist David S. Witmer, M.D.'s February 24, 1998 examination which revealed that plaintiff should continue with his "conservative plan of treatment." (R. 14, 188.) Dr. Witmer further opined that plaintiff likely would be able to return to regular work activities within 8-12 weeks. (R. 14, 188.)

---

[3]If an individual can perform light work, he also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b).

On June 12 and 17, 1998, Dr. Patti opined that plaintiff was disabled from his carpentry job, but that he retained the RFC to perform other jobs. (R. 211, 212.)

For these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ _____
U.S. Magistrate Judge

4-22-2010
Date